May it please the court. Good morning. The case of Jacob Ross took place in the heart of the COVID-19 pandemic, March of 2021. At the time, the court in this case allowed, in fact required, participants to be masked, including the defendant, Mr. Ross. This case raises a very unique issue regarding the identification of the defendant by a government witness, Ms. Sasha Peters. At trial, the government called Ms. Peters as a key witness to its case against Mr. Ross regarding his charges of manufacturing child pornography. The government called Ms. Peters, she got on the witness stand, and she was asked could she identify Mr. Ross. At the time, he was still wearing his mask and was seated at defense table. Ms. Peters, on two occasions, said no. Essentially, she could not identify Mr. Ross. Counsel for the government then asked the court to instruct the defendant to take down his mask in an effort to assist Ms. Peters in trying to make this identification. And he used his name, right? He did. I mean, the court used the defendant's name. He called, he told Mr. Ross, please take down your mask. Was there anything wrong with him asking the defendant to take down the mask, but putting aside the fact that he called them out by name? I think it would have been more appropriate had he just said the defendant, will the defendant take down his mask. That's the procedure that the court seemed to engage in with prior witnesses. The distinction being that prior witnesses were able to initially identify the defendant with his mask on, whether by pointing at him at counsel table, identifying articles of clothing. And at that point, government counsel would ask the court to instruct the defendant to pull down his mask to confirm the identification with the mask down. I get your argument, but this case doesn't strike me as the kind of classic eyewitness identification case where you've got somebody who sees a defendant for a moment. The classic example is a bank teller sees a bank robbery suspect and then the suspect runs out and he or she is asked to make an identification. In this case, Ms. Peters apparently had a long standing relationship, a personal relationship with the defendant, knew him for a good bit of time. So, I mean, these factors that we take into account with respect to identification, do they really apply in this context given the fact that it doesn't appear to be in dispute that she actually knew him? Well, we would argue they don't apply because of the very unique nature of what occurred when the court told Mr. Ross to pull down his mask. It's not at this point an impermissibly suggested identification procedure. It's, in fact, the court stepping in and identifying Mr. Ross. Did defense counsel object? Did not, Your Honor. So, how is this not harmless? Given the weight of the other evidence and didn't four other witnesses identify him during the trial? They did, Your Honor. And three of those before Ms. Peters testified, correct? That's correct. So, how is this incident prejudicial? Two responses. First, it's why we're arguing to you that it's structural error, that the harmless error or plain error view is not necessary given the nature of this particular error. That is a unique error that goes to the fundamental nature of a criminal trial. The government has the burden of proof. The government must put forth evidence from the court, the trial court, in fact, identified Mr. Ross for the witness. Just to make sure I'm clear, the defense counsel did not object at that point, correct? Did defense counsel ever raise it at any point after that in the trial or ask for an instruction on the issue or anything? No, Your Honor. What I would say in defense of defense counsel is I think this procedure had been taking place on prior witnesses, again, acknowledging it's a unique circumstance where the court is dealing with masks. The problem with Ms. Peters' testimony is she could not do any identification of Mr. Ross at counsel table despite the fact that he is sitting with defense counsel, as the other than to tell, quote, Mr. Ross, pull down your mask without any indication that Ms. Peters could, that she could otherwise identify him, causes the problem that we're raising. I acknowledge that the evidence indicates that she had a one-month romantic relationship with him, with Mr. Ross, where they're essentially living together. The problem is when asked if she could- I mean, you would think she could have identified him then. Correct. Correct. And this is a fundamental witness to the government's case. Counsel for the government, in her opening statement, referred specifically to Ms. Peters' testimony. And so the jury, when they hear her being called to stand, is anticipating a witness that they have heard, forecast, resided with Mr. Ross, engaged in the specific offense conduct that he's charged with, along with other offense conduct. And so to then have the intervene and assist the government by identifying Mr. Ross for the witness, not only does it create a due process problem for my client, it shifts the burden off the government, but it also removed the potentially powerful argument for defense counsel. Had the government not been able to establish that Ms. Peters could identify Mr. Ross and remove her from the witness stand, defense counsel is now able to argue that to the jury. And by the court stepping in in this way and identifying Mr. Ross for Ms. Peters and for the government, it removes that argument from defense counsel. But even if we can see that the initial sort of identification procedure may have been unduly suggestive, then you sort of get to the it seems to me that given this unique circumstance where you had, as you can see, a witness who knew the defendant for over a month, they were in a romantic relationship. If you tick through those factors, it seems that any issue with respect to suggestiveness on the front end is dissipated by the fact that most of those factors favor the government. Don't you agree? I agree, Your Honor. If the court determines that the bigger's impermissibly suggestive analysis appropriate on these facts, then to the point you made, those factors, I would say, weigh in favor of the government and we're back to a plain error analysis. So, what we're arguing to you is because of exactly what happened in this trial, where it's not, you know, law enforcement engaged in some pretrial impermissibly suggestive mechanism for identification, or it's not even argument by defense counsel or us on appeal, that something about the nature of where the defendant was seated caused impermissible suggestiveness. The court, in fact, identified Mr. Ross. It wasn't Ms. Peters that did the identification. It was the court by saying, Mr. Ross, take down your mask. In fact, did the identification. So, it's not impermissibly suggestive. It's, in fact, the court essentially offering evidence on behalf of the government. That's the distinction we're drawing while we are arguing to you that it's structural error and not plain error. I mean, but you don't have any case that supports that. That the fact that this is structural error? No, Your Honor. This is a unique, very specific scenario. So, you want us to be the first to say that? That's what we're arguing to, yes. But I do think if you take this for our argument that it is the defendant, then it does go to the fundamental nature of criminal trials, where not just my client demands that the government bear the burden, but the public, in order to have trust in the outcome of criminal cases, have to rely on the fact that the government has to put forth evidence, that the government has to convince the jury beyond reasonable doubt based on that evidence. And when the court in this case makes an error of assisting the government by identifying Mr. Ross for the witness, it skews the fundamental nature of a criminal trial. And so, that's why we're arguing to you that it's structural error. Now, Mr. Willis, I think you well conceded that you need this structural error to prevail. Plain error won't do it for you. You're in a tough place to pull the circuit for that. I've tried that before. It's very difficult, even when we leave out elements. And, you know, the Supreme Court said that's not structural. You know, the Ray Eid cases where it's found to be an element to be proven, it's not given. But what I'm asking you is this. Doesn't this really go to the weight of it? For example, you know, I did a lot of trial defense work in my private practice. Wouldn't you be able to argue here? You know, you didn't object. You said, look at that. She couldn't identify. The judge had to just tell her who he was. My question is this. How is that structural? Doesn't it really go to the weight of it? You could have easily argued that. Not you, whatever. You could have argued that to the jury. I mean, I love talking to the jury and say, listen, this person, for a whole month, she had whatever relationship with him. Couldn't do it. Judge had to drag my ass. Matter of fact, before that, tell him, that's him. That's his name. Now, that's him. Now, can you identify? Those kind of things. Doesn't that go to the weight of this in a sense? Because, you know, you can't stand back to court in the sense that now you come here and say it was a horrible structural error, but you didn't take advantage of the opportunities in trial as to that interference, if you will, as you call it, instigating themselves into the trial. Isn't that kind of what we are here now? I take your point, Your Honor. I think where I would try to draw a distinction is the fact that had the trial court not identified Mr. Ross, there's no further testimony from Ms. Peters. It's not that defense counsel now has to spend time cross-examining her. It's that she can't make the identification. Therefore, there's no further evidence from her. Aren't you kind of speculating if he had said, will the defendant take down the mask or just nod it over to the defense counsel table? We don't know what she would have said, do we? We don't know. But we do know from two prior attempts that she was unable to identify him, and there's no indication in the record that she would have been able to identify him but for the court telling Mr. Ross to remove his mask. Do you equate this with a sunglass situation where someone comes up to the stand with sunglasses on and the person coming in, the judge says, take those sunglasses off? Would that be a problem? Or do you think the only problem is that he said who he was before that? You don't quibble with the mask coming down. You're good with that? No, Your Honor. It's just the same. This is Mr. X and that's him. Now, do you know, almost like, can you identify him? Right. That's the problem. Yes, Your Honor. I think the context with this specific witness who hasn't been able to offer any identification, unlike the other witnesses at trial where they were using this procedure where they would say he's wearing a suit, he's seated at counsel table, and then I anticipate it's out of an abundance of caution, government counsel asked that his mask be removed so that in fact the witness can identify him without a mask. Here we have no indicia from the witness that she has any ability to identify him. Your time is running out. So I have one last question. My colleagues can ask what they will, but one question to you. Let's say she did what you hoped she would do. I don't know who it is. I can't identify the person. And she goes away. Tell me which offense would then be clearly off the board for your client. In other words, take her out of the equation. Which one would you say, oh, without her, this one couldn't be proved. There's no evidence. Tell me which offense is that, that she relied solely on her being able to identify him. There's not an offense that the government relied solely on her. That's what I thought. That's a problem, isn't it? It is a problem if we're in the harmless zone. I agree. But I would point out that her testimony directly linked the phone that trial counsel was arguing had access to other people at this company. Her testimony was the I observed him with the phone. I was with him when he did these things to manufacture child pornography. So, I think her testimony was critical to the government's case. It also involved other 412 conduct. They clearly would have had an influence, not on the jury, but potentially the court in sentencing. So, I don't know that it's as easy as saying we can completely cut Ms. Peter's testimony out and know how the jury would have found, particularly when, as our earlier defense counsel's notes, doesn't have this argument that the government called this witness and she couldn't identify him at all. And you heard her in openings. You heard the government opening statement forecast this evidence. Well, you didn't get to, I took up some of your time. So, you want to get to the sentencing aspect of it? I don't need to be heard further on the sentencing aspect, your honor. I think it's fully briefed. Are you okay with that? All right. Thank you, counsel. Mr. Enright. Thank you, your honor. May it please the court. Anthony Enright for the United States. The district court did not plainly err by allowing Associate Peters to identify Ross after instructing him to remove his mask. The plain error standard applies, the plain error standard applies even to structural errors, but this isn't a structural error under this court's precedent in Green, its recent decision in Ivey. What if we find it is structural error? If you find it structural error, your honor, there's four, there's three components of the plain error standard that still apply. Still find that there's an error. You still have to find that it's plain, which means it's beyond reasonable dispute. And I think I heard defense counsel say this is really a very unique situation. There is nothing. It will, arguably, it's unique because a court has not identified for a witness the defendant before. That's what made it unique. The court helped the government and the witness by identifying the witness, I mean the jury. How does that not impact the fairness of the trial? Well, your honor, because ultimately the fairness of the trial focuses on whether the adversarial process is working. And to Judge Gregory's point, or discussion he had at least, the jury saw that. And the weight of an identification. The jury saw what? The jury saw what transpired. The jury saw the court mention Mr. Ross' name before taking off his mask. The court evaluated the witness' demeanor when the witness identified him, pointed at him, and said, yes, I'm sure. And ultimately, it's for the jury to decide whether that is an identification worthy of credit. That's what the Supreme Court has identified. When it has applied the standard, which is, in the court's words, a check, a due process check on law enforcement identification. And I think that's an important point because Ross, in his brief, cited the Simmons decision by the Supreme Court for this principle, which is the Biggers and Braithwaite factors, that line of decisions that the court addressed in Perry. That due process check applies only to show-ups or identifications arranged by law enforcement. That's not to say there's no limits on what a district court can do. But the defendant has not raised it. He identifies a couple other decisions about what happens when a witness has contact with the jury outside of the courtroom. But... Do you know of any other cases where the court has identified the defendant in front of the jury when the witness could not? Not like this, Your Honor, no. I don't think the court... That might be why opposing counsel hasn't found any precedent. Well, no, I'm not suggesting he'd need precedent, but there are rules other than the due process check that he identified that govern statements by the court. For example, Rule 605 says the court can't be a witness. But those weren't raised. I do think this specific issue raised by the defendant is one that applies only to law either directly or by analogy. I don't think it warrants reversal under any standard here. I don't think there's an error that... I know there wasn't a specific instruction given to the jury on this at the time it happened. But do you know whether or not the court, you know, at the end when the court was giving general instructions, said that thing about anything I may have said is not evidence? Do you know whether that was given? Your Honor, to be candid, I'm not 100% sure. I want to say I think so, but I've argued four cases in the last few weeks. It might have been in another case. I apologize, but I don't want to answer it. Opposing counsel says that Ms. Peters was really fundamental to the government's case, and then that's part of the problem here. What's your response to that? I'm not going to say she wasn't important, but everything she said was corroborated. Angela Peters, or Angela Carpenter was another witness. Also testified that the same M.O. She put the... He had his phone and he projected it on the screen and produced images of child pornography with a woman overseas who he had molest infants. She testified that too, much like Social Peters. And I want to emphasize that even without the identification, there's ample circumstantial evidence that the person who Social Peters had experience with was Ross. For example, Angela Carpenter testified that she saw Social Peters at his apartment, and Social Peters testified, I saw Angela Carpenter there. She described the apartment in detail in a way that's Angela Carpenter corroborated, and it's consistent with the images of the apartment shown to the juror. He spoke to Social Peters about a dungeon where he kept young children. Unfortunately, other witnesses corroborated that. Angela Carpenter, in his own statement to law enforcement that the officers saw, he said, you'll never find the dungeon. That's all circumstantial evidence that they're talking about the same person, even independently of the identification. And because, to a point Judge Diaz was discussing, because Ms. Carpenter or Ms. Peters had an intimate, live-in relationship with Ross for a month, there's no reasonable probability that she wouldn't have identified him under different circumstances had the court not mentioned his name before instructing him to remove the mask. And even if that's considered an impermissibly suggested identification, this court can say with confidence that it was nonetheless reliable because of that. The opportunity to view was extraordinary. Yes, she's a drug user, but she testified with details that were corroborated again and again, both by the information they found on his phone, which another thing linking that phone to him was that they found it in his pocket, and he provided the passcode for it. And they found 28 images of child pornography, most of which he produced on that phone in his pocket. But there are basically three different reasons why this error would be harmless or not prejudicial. It's very likely that the witness would have identified the defendant in any event. There's very strong circumstantial evidence of his identity, and there's very strong other evidence, even if you were to discount Sasha Peters entirely, that overwhelmingly establish the offenses. Mr. Enright, let me ask you this question. Obviously, it's a hypothetical, but I ask because no one has been able to identify, and perhaps, as Judge Thacker said, the courts never do this. But what if the judge had said, and she said, I can't identify the person, and he said, it doesn't matter, you don't need to identify, just tell what the person did that you encountered. What would we do to a case like that? Well, I think it depends on what she said. If she said, that's not the guy, I think we'd have a tough time proceeding with the witness. No, and in my hypo, she didn't say, she never said, you know, I just can't identify. She didn't exclude him, just, I can't say that's him. And you, it doesn't matter, you just testify as to what the person did, you know, and you went on with the trial. Will we get to structural there? I'm just trying to find, where would we get to this place where the court, an appellate court could say, something went horribly wrong, and something that counsel, that the defendant was entitled to, structurally or whatever. Do you think, do we get close to that line, or where would we be there? Well, I don't think it would change it to a structural error, simply because this court has said that identification, or I'm sorry, this court, the Supreme Court has actually said, that identification evidence is just evidence like any other, and specifically said, it doesn't go to the heart of the adversary process. If you have a situation, and this is, I'll reiterate that it's a hypothetical. Absolutely. It's different from this case. If you have a situation where that particular identification statement, that's the guy, is the difference between reasonable doubt and not, or even the difference between a then I think that could be dispositive. Why I suggest it's very different in this case is for two reasons. One is, we would have probably gone forward with Ms. Peters, even if she couldn't have identified him, because she had so much circumstantial evidence identifying him. She had so much testimony that she could give, saying, well, are you familiar with this apartment? Yes, it had these teal walls. Here's the layout. It's a one-room studio with one door. It's to the bathroom. Well, another witness said exactly the same thing. I corroborate his photographs. That's good evidence that they're talking about the same person. Have you seen any other people at that apartment? Yeah, I saw Angela Carpenter. Angela Carpenter, did you see her? Yes. That's pretty strong evidence we're talking about the same guy. What was his modus operandi? Is it unique? Yes, here's what he did when he was producing child pornography. I mean, these were pretty specific things. She was performing a sex act on him while he paid someone to produce child pornography, which is the same thing he did with Angela Carpenter. All of those details would allow a jury to find pretty strong confidence that the person Sasha Peters was talking about was the same person Angela Carpenter was talking about, the same person who appeared in images identified by Angela Carpenter that were on his phone. Depicting produced child pornography that they found. So in this case, and it's somewhat unusual because a lot of times there's not circumstantial evidence of identity. But here I think it's very strong. And another factor in this case is even without Ms. Peters' testimony, there would be very, very strong evidence supporting the defendant's guilt. I will touch briefly, I won't belabor the point, but I'll touch briefly on the sentencing issue. There's a very narrow proportionality principle in the Eighth Amendment. And it requires, it holds that a sentence only violates the Eighth Amendment if it is grossly disproportionate and excessive when viewed in light of the fall of the conduct for which the defendant is reserved, related to the offense. This case doesn't come close to reaching that narrow proportionality principle. This court has held that it's a case that would, a sentence that would, is hen's teeth rare. And certainly a 660-month sentence for someone who's 47 years old is one of the most serious sentences the court can impose. But this conduct and the defendant's offenses are absolutely among the most serious a person can commit. And the sentence here, although serious, is absolutely proportionate. That was a, it was a below guidelines sentence, wasn't it? Considerably below guidelines. The guidelines advise 2,040 months. He received 660 months. And that's very substantial downward variance. And I think that is telling. And it's comparable to sentences that this court has affirmed for conduct that is not, not even close to as heinous as the conduct for which he was held responsible, for which Mr. Ross was held responsible. This court basically established the baseline in Cobler. We have, we have the Supreme Court case setting out saying a sentence of life for 600, for distributing 660-some grams of cocaine is not grossly disproportionate. And if the conduct is more heinous, more culpable, it can't meet that. You can't meet even the first part of the proportionality test. And this conduct is objectively worse by a fair margin. So if the court has more questions, I'm happy to answer them. But if not, I will rest on my briefs and yield the balance of my time back to the court. Thank you, Mr. Enright. Mr. Willis, you deserve some time. Just like to quickly try to clarify and respond to a point counsel made about the impermissibly suggestive standard that we raised in our brief. When we discuss in our brief the argument we made about structural error, we cited to Turner versus Louisiana Supreme Court case for the proposition that the based upon the evidence developed at trial. That was essentially our argument that why this is structural error in that the trial court identified Mr. Ross, not the witness. That the trial court, because we articulated one point, essentially testified that this is Mr. Ross. Where we raised the Simmons case in response to counsel is in our discussion about plain error. And I think perhaps inartfully, but we raised it to the point that this is, if the court engaged in a plain error analysis, problem one, that the error is plain, that identification issues raise due process concerns. But where I would not concur is that the appropriate analysis for this particular error that occurred at trial is the impermissibly suggestive analysis to the point that the police misconduct or police procedures. That's not what we're talking about here at all. It's the court identifying the witness or identifying the defendant when the witness could not. Mr. Enright made a point that I thought was a good one about the other circumstantial evidence that she could have testified to, even if, and I'm talking about Ms. Peters, even if she had not definitively identified Mr. Ross. And we go back to the beginning. I mean, this was a case of United States versus Ross, right? There's no question that Mr. Ross was who he is. He had witnesses who identified him before Ms. Peters testified. And so, you know, it's easy, I suppose, for us to criticize the district court for stating what seemed to him to be the obvious. That's Mr. Ross. But even if, in fact, that was a mistake on the part of the district court, Mr. Enright makes the point that the witness still would have been allowed to testify as to all the things that she saw firsthand that suggested that the same person who handled the phone, the same person who was in the apartment, the same person who produced the child pornography was, in fact, Mr. Ross, even if she could not identify him. That all suggests to me that this is not really a structural error. It really is something that needs to be gauged against the standard of plain error and or harmlessness. I heard Mr. Enright make that argument, Judge Diaz. I'm just thinking through it practically. I'm not sure how that could occur. I mean, perhaps they could show her photos from the inside of the apartment for her to or other things that the evidence would be that she participated in with Mr. Ross. I'm not sure how she would be allowed to testify that if she can't, in fact, identify the defendant as the person that was involved in the conduct. I think this was what the counsel was saying is that you can connect direct identification with circumstantial evidence because the best thing could have happened for you, I guess, would be she would say clearly, unequivocally, that is not him. But anything short of that, you can do that. You can say, all right, you can identify this apartment, that kind of thing, circumstances, but you can't remember that, whether or not that's him. Another person says, yes, that's exactly him. I was there and I saw her there. What are you doing? That's direct identification of him or witness one. Witness two identifies circumstances, which connects that identification. So that's the point, I think, Ms. Zimmer was making. It is a difficult argument from my hypothetical, but he brought it down to what, because we're looking at what the ifs and could have been. And obviously, you know, you make a good point. I can see the defense counsel was saying it seemed like that was too far. But even assuming that it's not a knockout for that witness, because there is so much circumstantial evidence that connects other people seeing those, you know, saw him and testified that was him. I think that's the point. So go ahead and finish making your arguments. Thank you. Just briefly, Judge, again, where the court in this circumstance identified Mr. Ross, said Mr. Ross take under mass. That is a different kind of error that we argue isn't susceptible to plain error analysis that is structural and would require a new trial. Thank you. Thank you, Mr. Lewis. Thank you, Mr. Enright, for your arguments. OK, thank you. We'll come down to Greek Council to proceed to our final case next.
judges: Roger L. Gregory, Albert Diaz, Stephanie D. Thacker